GEORGE M. *v.* COMMISSIONER OF CORRECTION
(SC 17941)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued October 17, 2008—officially released March 24, 2009

*Madeline A. Melchionne,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,*

attorney general, and *Henri Alexandre*, assistant attorney general, for the appellant (respondent).

*Neal Cone*, senior assistant public defender, for the appellee (petitioner).

*Opinion*

VERTEFEUILLE, J. The respondent, the commissioner of correction, appeals, following our grant of certification, from the judgment of the Appellate Court reversing the judgment of the habeas court denying the petition for a writ of habeas corpus filed by the petitioner, George M.[1] *George M.* v. *Commissioner of Correction*, 101 Conn. App. 52, 920 A.2d 372 (2007). The issues raised by the respondent in this certified appeal are whether the Appellate Court improperly: (1) reversed the habeas court's decision that a sentenced prisoner whose dates of offense were identified as "1993–1995" was not entitled to have statutory good time credits applied to his sentence because, pursuant to General Statutes § 18-100d,[2] such credit is not available for offenses committed on or after October 1, 1994; and (2) concluded that good time credit statutes are penal in nature and that the rule of lenity therefore applies to their interpretation. *George M.* v. *Commissioner of Correction*, 283 Conn. 910, 928 A.2d 537 (2007). We agree with the respondent's first claim and, accordingly, we reverse the judgment of the Appellate Court.

The habeas court's memorandum of decision sets forth the relevant facts, which the jury reasonably could

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the defendant, the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[2] General Statutes § 18-100d provides: "Notwithstanding any other provision of the general statutes, any person convicted of a crime committed on or after October 1, 1994, shall be subject to supervision by personnel of the Department of Correction until the expiration of the maximum term or terms for which such person was sentenced."

have found, as follows. "Between 1993 and 1995, the [petitioner] lived in Bristol with his wife and their child, S, and his wife's three children from a previous marriage, M, C and D. During this time, the [petitioner] subjected M and C to sexual contact by playing what was called 'the ice game.' The ice game was played one or more times each month, and began when M was seven years old and continued until she was nine years old. . . . The children did not complain to anyone about the ice game during the three years that the [petitioner] subjected them to it because they were afraid of reprisal." The Appellate Court's opinion in the present habeas appeal set forth the subsequent procedural history. "The state [thereafter] filed an information . . . charging the petitioner with one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21 (1). The state alleged that the conduct underlying the sexual assault charges occurred 'on or about diverse dates in 1993 to 1995.' The state alleged that the conduct underlying the risk of injury charges occurred 'on diverse dates in 1993 through 1995.'

"The state filed [a second] information . . . charging the petitioner with one count of sexual assault in the third degree in violation of . . . § 53a-72a (a) (1) and one count of risk of injury to a child in violation of . . . § 53-21 (1). The state alleged that the conduct underlying these charges occurred 'on or about diverse dates in 1993 through 1995.'

"The informations were joined for a trial by jury. In May, 1998, the petitioner was convicted of all of the crimes with which he was charged. [In June, 1998], the trial court sentenced the petitioner to a total effective term of twelve years imprisonment, suspended after

eight years, to be followed by three years of probation. [The Appellate Court] affirmed the conviction following the petitioner's direct appeal.

"The judgment mittimuses issued following the conviction did not provide a specific date for each offense. Instead, in the spaces designated for the 'date of offense' for each offense listed in the mittimuses, the date range '1993–1995' was inscribed. It fell upon the respondent, upon receipt of the mittimuses, to calculate the petitioner's release date. The respondent selected January 1, 1995, as the offense date in evaluating the petitioner's eligibility to earn good time credit afforded by [General Statutes] § 18-7a. That enactment provides in relevant part that '[a]ny person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983,' may earn good time credit during the term of his imprisonment. General Statutes § 18-7a (c). In contrast . . . § 18-100d provides: 'Notwithstanding any other provision of the general statutes, any person convicted of a crime committed on or after October 1, 1994, shall be subject to supervision by personnel by the Department of Correction until the expiration of the maximum term or terms for which such person was sentenced.' Thus, a determination of an offense date is significant; good time credit may be earned by prisoners who are imprisoned for offenses that occurred on or after July 1, 1983, but it cannot be earned by prisoners who are imprisoned for offenses that occurred on or after October 1, 1994.

"[In October, 2004], the petitioner filed a motion to correct an illegal sentence. The petitioner sought clarification of his sentence, arguing that the offense dates were ambiguous and potentially subjected him to double jeopardy. [In January, 2005], the trial court denied the motion.

"[In February, 2005], the petitioner filed a petition for a writ of habeas corpus. The petitioner challenged

the respondent's decision to designate January 1, 1995, as the offense date for determining his eligibility to earn good time credit." *George M.* v. *Commissioner of Correction*, supra, 101 Conn. App. 53–55.

"Following a hearing during which the habeas court heard testimony from a records specialist employed by the department of correction, the court issued a thorough memorandum of decision denying the petition." Id., 56. "The court [also] rejected the petitioner's claim that the rule of lenity applied and that the rule's application weighed against upholding the respondent's determination. . . . The court [finally] rejected the petitioner's claim that the jury did not find that he had committed any offense on or after October 1, 1994." Id., 57.

The petitioner thereafter appealed from the habeas court judgment to the Appellate Court, which concluded that "there is no basis, either in law or in logic, upon which one could conclude that the jury found that the petitioner necessarily committed any or all of the charged offenses on or after October 1, 1994." Id., 60. The Appellate Court therefore determined that the petitioner's sentence was eligible for good time credit. That court further concluded that the good time credit statutes are ambiguous and their interpretation has "the potential to burden defendants in such a manner that the statutes are penal in nature." Id., 64. It thus concluded that the rule of lenity applies to the good time credit statutes. Id., 65. Accordingly, the Appellate Court reversed the judgment of the habeas court. Id. This certified appeal followed.

The respondent claims that the Appellate Court improperly concluded that a sentenced prisoner whose dates of offense were identified as "1993–1995" was entitled to have statutory good time credits applied to his sentence because such credit is not available for an

offense committed on or after October 1, 1994. More specifically, the respondent asserts that, because the evidence shows that at least one, if not more, of the petitioner's offenses occurred on or after October 1, 1994, the petitioner did not satisfy his burden of proving that he was not convicted of an offense that had occurred on or after October 1, 1994. The respondent contends this failure renders the petitioner's sentence ineligible for good time credit pursuant to § 18-100d. In response, the petitioner claims that the Appellate Court properly determined that the petitioner's sentence is good time credit eligible because there was no legal or logical basis for the jury to have decided that any of the petitioner's offenses had occurred on or after October 1, 1994. We agree with the respondent, and, accordingly, we reverse the judgment of the Appellate Court.

We begin with the appropriate standard of review. "The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. *Phillips* v. *Warden,* 220 Conn. 112, 131, 595 A.2d 1356 (1991). Historical facts constitute a recital of external events and the credibility of their narrators. *Copas* v. *Commissioner of Correction,* 234 Conn. 139, 152, 662 A.2d 718 (1995). Questions of law and mixed questions of law and fact receive plenary review. Id., 152–53." (Internal quotation marks omitted.) *Duperry* v. *Solnit,* 261 Conn. 309, 318, 803 A.2d 287 (2002); see also *Tyson* v. *Commissioner of Correction,* 261 Conn. 806, 816, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong,* 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003). Our review of the Appellate Court's reversal of the habeas court's finding as to whether the date of offense qualifies the petitioner's sentence for good time credit is a mixed question of law and fact. Accordingly, our review is plenary.

Our analysis begins with a more detailed review of the proceedings in the habeas court. "The petitioner alleged [in his habeas petition] that, because of the respondent's decision [to designate January 1, 1995, as the offense date for determining the petitioner's eligibility to earn good time credit], he was deprived of his statutory right to earn good time credit and that, if the respondent had afforded him such right, he would have completed his period of incarceration and been released to probation on or about April, 2004. The petitioner alleged that his sentence and sentence calculation are illegal in that the sentence is ambiguous as to the date of offense, and that, for the purpose of determining his eligibility for good time credit, he was not convicted of a crime committed on or after October 1, 1994 . . . . The petitioner argued that the respondent's decision violated his right to a jury trial under the federal and state constitutions because the respondent is impermissibly lengthening [his] sentence on the basis of a fact that was never either admitted by [him] or proven to a jury . . . . The respondent asserted as a defense that the petitioner was sentenced for offenses which, at least in part, occurred on or after October 1, 1994, and, therefore, that the petitioner was not entitled to good time credit. The respondent asserted that it had calculated correctly the petitioner's term of confinement." (Internal quotation marks omitted.) *George M.* v. *Commissioner of Correction,* supra, 101 Conn. App. 55.

The habeas court thereafter denied the petitioner's petition for a writ of habeas corpus. Id., 56. The court found that "[t]he victims testified at the [petitioner's underlying] criminal trial that the conduct constituting the offense occurred several times a month between 1993 and the summer of 1995. . . . Testimony by a detective involved in the investigation indicated that the offenses occurred between September, 1993, and June, 1995. . . . The court also found that [t]he offense

date of January 1, 1995, was selected by the respondent to give the petitioner the earliest day of the 1995 calendar year." (Internal quotation marks omitted.) Id.

"The habeas court noted that it was not improper for the state to have alleged that the petitioner committed the offenses at issue during the defined, yet broad, date range alleged in the informations. . . . The court then reasoned, on the basis of its findings, as follows . . . 'It is clear and undeniable . . . that *the evidence at the underlying criminal trial shows that many instances of the offenses occurred, both prior to and after October 1, 1994. It follows therefrom that the petitioner in fact stands convicted for offenses committed on or after October 1, 1994.* Consequently, the petitioner's controlling sentence is good time ineligible.'" (Emphasis altered.) Id., 56–57. As we previously have set forth herein, the Appellate Court subsequently reversed the judgment of the habeas court. Id., 60.

It is axiomatic that "the party who affirmatively alleges a fact has the burden of proving it." *Reardon* v. *Mutual Life Ins. Co.*, 138 Conn. 510, 520, 86 A.2d 570 (1952); see also *McClain* v. *Manson*, 183 Conn. 418, 429–30, 439 A.2d 430 (1981) (burden on petitioner to allege and prove facts necessary to support claim); *State ex rel. Capurso* v. *Flis*, 144 Conn. 473, 477, 133 A.2d 901 (1957) ("[b]y alleging the facts stated in [the special defenses], the defendants assumed the affirmative and had the burden of proving those facts"); *AAIS Corp.* v. *Dept. of Administrative Services*, 93 Conn. App. 327, 329, 888 A.2d 1127 ("party seeking the exercise of the court's jurisdiction bears the burden of alleging facts that clearly demonstrate that it is the proper party to invoke judicial resolution of the dispute" [internal quotation marks omitted]), cert. denied, 277 Conn. 927, 895 A.2d 798 (2006); *Northeast Enterprises* v. *Water Pollution Authority*, 26 Conn. App. 540, 543, 601 A.2d 563 (1992) ("plaintiff must prove the allegations of his

complaint" [internal quotation marks omitted]). In the present case, the petitioner alleged in his habeas petition that he was not convicted of a crime committed on or after October 1, 1994. By making this factual allegation, the petitioner assumed the burden of proving that allegation.[3] The habeas court determined that he did not satisfy this burden. In its consideration of the petitioner's appeal, however, the Appellate Court failed to address or review the habeas court's determination that the petitioner had failed to satisfy his burden of proof.

Moreover, the Appellate Court's analysis turned primarily on its interpretation of the jury's verdict in the petitioner's underlying criminal case. *George M.* v. *Commissioner of Correction*, supra, 101 Conn. App. 60. In accordance with our plenary scope of review, and with the entire criminal record before us, we first

---

[3] The petitioner conceded this point during oral argument in the habeas court as reflected in the following exchange between the habeas court and counsel for the petitioner. Significantly, at the end of the exchange, counsel also questioned his ability to satisfy this burden.

"The Court: But don't you have—since the burden of proof rests with [the petitioner], don't you have to demonstrate to me that the offense for which he's being held occurred prior to October 1, 1994?

"[The Petitioner's Counsel]: Um, well—then in the argument—

"The Court: And I looked at the mittimus and I understand the mittimus says date of offense 1993 to 1995. And reading that as broad as it possibly could be read, the mittimus would indicate that the offense occurred sometime between January 1, 1993, and December 31, 1995.

"[The Petitioner's Counsel]: Well, I mean, this is the point of relying on *State* v. *Rawls* [198 Conn. 111, 121–22, 502 A.2d 374 (1985)], Your Honor.

"The Court: Well, I—I understand your argument, but, I mean, don't you have to convince this court that this offense, either through a presumption or through actuality, is prior to October 1, 1994. If so, then [the petitioner] would be entitled to good time credits on that eight year sentence. Correct?

"[The Petitioner's Counsel]: Yes.

"The Court: If not, then he's not entitled to good time credits.

"[The Petitioner's Counsel]: Well, I disagree with that. I mean, we're gonna lose instantly the way you state it because *we cannot prove that the offense occurred before October 1, 1994.*" (Emphasis added.)

consider whether the petitioner satisfied his burden of showing that he was not convicted of a crime that had been committed on or after October 1, 1994. We may consider the merits of his claim, that is, whether the petitioner is eligible to earn good time credits when he is convicted of crimes that occurred both before and after October 1, 1994, only if we answer this question in the negative.

Before the habeas court, the petitioner submitted two exhibits in support of his petition: the transcript from the underlying criminal trial in which he was convicted, which was conducted in April, May and June, 1998, and the transcript from the hearing in connection with his motion to correct an illegal sentence on January 12, 2005. The petitioner also presented the testimony of Michelle Deveau, a department of correction records specialist, who testified as to how the respondent determined the petitioner's release date given the date range upon which he was convicted.

The record from the petitioner's underlying criminal trial reveals a number of important points. In its original information, the state charged the petitioner with only one count of each offense of sexual assault in the first degree and sexual assault in the third degree. The state alleged that these offenses occurred sometime between January 1, 1993, and December 31, 1995.[4] The victims

---

[4] We are mindful that, at times, it is proper for the state to allege only a date range during which the petitioner committed the charged offenses, instead of a list of particular dates. "The general rule is that where time is not of the essence or gist of the offense, the precise time at which it is charged to have been committed is not material." State v. Hauck, 172 Conn. 140, 150, 374 A.2d 150 (1976). This is especially true where the offense alleged is of a continuous nature and is claimed to have constituted injury or risk of injury to a child. Id., 150–51. This was precisely the situation in the present case. The state found it impossible to pinpoint accurately all of the specific dates within this three year time span during which the charged offenses occurred. It had, however, an abundance of evidence, including testimony from the child victims themselves, indicating that many instances of these offenses did, in fact, occur. The state therefore properly identified only the date range of 1993 to 1995 in its information.

in this case were young children who were unable to specify the particular days on which these offenses occurred. At trial, the state presented testimony from the victims themselves, who testified that the offenses were multiple and continuous, having occurred over a period of three years, several times a month. In particular, M testified that the offenses occurred either once or twice a month throughout 1993, 1994 and 1995, and C testified that he was sexually assaulted approximately five or six times a month over that same period of time. Additionally, the testimony of a detective involved in the investigation surrounding the offenses indicated that the offenses occurred many times throughout the date range of 1993 to 1995.

The trial transcript also reveals the instructions given to the jury regarding its consideration of the identified date range. The trial court instructed that in order to find the petitioner guilty on each count, the jury would have to find that the state had proved each element of each count beyond a reasonable doubt. The court explained to the jury that an element of each count included the "time and place alleged"—specifically, "the period from 1993 through 1995 in the town of Bristol." The jury therefore was instructed that it could find the petitioner guilty of each count only if it believed that the state had met its burden of proving, beyond a reasonable doubt, that the petitioner had committed the charged offenses throughout 1993, 1994 and 1995 in the town of Bristol. The jury subsequently convicted the petitioner of each charged offense, thus crediting the testimony of the victims and finding that the petitioner had committed the charged offenses in 1993, 1994 *and* 1995.

In its opinion reversing the judgment of the habeas court, the Appellate Court concluded that the jury's verdict could not be interpreted to indicate one way or the other whether the jury had found the petitioner

guilty of committing any offenses on or after October 1, 1994. The Appellate Court suggested that "[n]either this court nor any other court has the ability to offer a different explanation of the jury's [general] verdict without resort to speculation." *George M.* v. *Commissioner of Correction,* supra, 101 Conn. App. 60. We disagree. Our careful and comprehensive review of the record of the petitioner's criminal trial reveals that, when the jury found the petitioner guilty of committing the charged offenses throughout this date range, in accordance with the instructions of the trial court, the jury found that the state had proved beyond a reasonable doubt that the petitioner had committed the offenses in 1993, 1994 *and* 1995. Thus, the jury's verdict indicated that the jury found that the petitioner had committed at least one offense on or after October 1, 1994.

At the hearing in connection with the petitioner's motion to correct an illegal sentence, counsel for the petitioner admitted that the state's identification of a date range instead of a specific date was due to the fact that the victims were young at the time of the alleged offenses, and they were not able to be specific about the particular dates on which the offenses occurred. Counsel claimed, however, that because the state did not prove specific dates at trial, an essential fact that would go to determine the length of the petitioner's sentence had not been proven before, and thus not decided by, a jury. The state responded that charging the petitioner with a specific date for each offense was not possible because the child victims were unable to provide any specificity with regard to when the offenses occurred. See footnote 4 of this opinion. Instead, the victims testified that the offenses occurred several times a month throughout 1993, 1994 and 1995. The court ultimately denied the petitioner's motion to

correct an illegal sentence, concluding that the petitioner's sentence was neither illegal nor ambiguous.

Finally, the testimony of Deveau, the department of correction records specialist, at the habeas proceeding reveals the process by which the respondent determined the petitioner's prison release date. Deveau's testimony ultimately made clear that given the charges, the testimony heard, and the jury's verdict of guilty, the specific offense date chosen by the respondent was inapposite to the ultimate fact that because of his conviction for offenses committed on or after October 1, 1994, the petitioner's sentence was not good time eligible.

After careful review of the entire criminal record, including the transcripts and the testimony presented by the petitioner in the habeas proceeding, we conclude that the Appellate Court improperly failed to conclude that the petitioner had not met his burden of proving that he was not convicted of an offense that had occurred on or after October 1, 1994. The testimony adduced at the petitioner's criminal trial clearly supports the conclusion that the petitioner's offenses were multiple and continuous, having occurred throughout 1993, 1994 and 1995. Additionally, the transcripts of both the criminal trial—including the trial court's jury charge and the jury's subsequent guilty verdict—as well as the subsequent proceeding concerning the petitioner's motion to correct an illegal sentence indicate the same. Because we find that the petitioner did not satisfy his burden of proof, we conclude that the Appellate Court improperly determined that "there is no basis, either in law or in logic, upon which one could conclude that the jury found that the petitioner necessarily committed any or all of the charged offenses on or after October 1, 1994." *George M.* v. *Commissioner of Correction,* supra, 101

Conn. App. 60. To the contrary, it is clear that the jury found that at least one instance of each of the charged offenses had occurred after October 1, 1994. We must therefore consider whether a petitioner is eligible to earn good time credits when he is convicted for crimes that occur both before *and* after October 1, 1994.

We are mindful that although this issue is one of first impression, our resolution is guided by this court's recent opinions in *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 738 A.2d 604 (1999), and *Tyson* v. *Commissioner of Correction*, supra, 261 Conn. 806. In *Velez*, this court faced the issue of whether § 18-100d renders General Statutes §§ 18-7 and 18-7a (c) (good time statutes) "inapplicable to persons sentenced to terms of imprisonment for crimes committed on or after October 1, 1994." *Velez* v. *Commissioner of Correction*, supra, 537–38. This court concluded that the good time statutes are not applicable to such persons. Id., 538; see also *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 217 n.2, 756 A.2d 1264 (2000) ("§ 18-100d renders the good time [credit] statutes inapplicable to persons sentenced to a term of imprisonment for crimes committed on or after October 1, 1994" [internal quotation marks omitted]).

In *Tyson*, this court went a step further. The dispositive issue in *Tyson* was whether the petitioner's pre-1994 sentence or post-1994 sentence governed his prison release date, for the purpose of incorporating any earned good time credit. *Tyson* v. *Commissioner of Correction*, supra, 261 Conn. 808. This court concluded that "the petitioner [may obtain] the benefit of good time credit under § 18-7a (c) with respect to his pre-1994 sentence, as was the intent of the legislature for crimes committed before October 1, 1994, [but that he must satisfy] the legislative mandate that the petitioner serve the full term of his post-1994 sentence . . . ." Id., 827. In other words, an individual's sentence for a

crime committed before October 1, 1994, *is* eligible for good time credit, while his sentence for a crime committed after October 1, 1994, is not.

Applying this rationale, it is clear that because the petitioner in the present case stands convicted for crimes that were committed both before *and* after October 1, 1994, his sentence is, at least in part, for a crime committed subsequent to October 1, 1994. Accordingly, our holding in *Tyson* compels our conclusion that the petitioner is not eligible for good time credit under §§ 18-7a and 18-100d.[5]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to render judgment affirming the judgment of the habeas court denying the petitioner's writ of habeas corpus.

In this opinion the other justices concurred.

---

[5] We decline to address whether the good time credit statutes are penal in nature, and we therefore do not reach the second certified issue, because we conclude that the good time statutes are not ambiguous. The rule of lenity is a rule of construction under which penal statutes are construed strictly against the state; *In re William D.,* 284 Conn. 305, 320, 933 A.2d 1147 (2007); *Johnson* v. *Commissioner of Correction,* 258 Conn. 804, 820, 786 A.2d 1091 (2002); "[t]he touchstone of [the] rule of lenity [however] is statutory ambiguity." (Internal quotation marks omitted.) *State* v. *Jason B.,* 248 Conn. 543, 555, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999); see also *State* v. *Lutters,* 270 Conn. 198, 219, 853 A.2d 434 (2004). We find no ambiguity in our good time statutes and the rule of lenity is therefore inapplicable to their interpretation. If an individual is convicted of a crime committed before October 1, 1994, he or she is eligible to receive good time credits. See General Statutes § 18-7a. On the other hand, if an individual is convicted of a crime committed on or after October 1, 1994, he or she must serve the entirety of his sentence, and is

*not* eligible to receive good time credits. See General Statutes §§ 18-7a and 18-100d.