PHILLIP MURPHY v. FIRST UNION CAPITAL MARKETS CORPORATION, WHEAT
FIRST SECURITIES, INC. AND FIRST UNION CORPORATION

No. COA01-966

(Filed 6 August 2002)

**1. Employer and Employee— failure to pay stock bonus—forfeiture based on leaving company—written notice**

The trial court erred by granting summary judgment in favor of plaintiff and by denying defendants' summary judgment motion on the issue of whether N.C.G.S. § 95-25.8 was violated when defendants forfeited part of plaintiff's bonus in the form of stock when he left to work elsewhere, because: (1) plaintiff's bonus is a wage under N.C.G.S. § 95-25.2(16), and the Wage and Hour Act under N.C.G.S. § 95-25.7 expressly provides for forfeiture of earned bonuses; (2) plaintiff was notified in writing of the changes to employee benefits prior to the implementation of a mandatory stock plan including that 75% of his bonus would be paid in cash and that the remaining 25% plus a 50% premium would be paid as stock as long as he remained with the corporation for at least three additional years; and (3) plaintiff was notified that if he quit his job, he would forfeit the 25% set aside.

**2. Employer and Employee— failure to pay stock bonus—forfeiture based on leaving company**

The trial court erred by granting summary judgment in favor of plaintiff for an alleged violation of N.C.G.S. § 95-25.6 for failure to pay plaintiff his stock bonus that defendant claimed plaintiff forfeited by leaving the company, because: (1) defendant informed plaintiff by letter that he would receive his bonus on 15 February 1998, and plaintiff received $900,000 in cash and $300,000 in restricted stock although the stock portion had not yet vested; and (2) plaintiff was informed about the plan in advance of receiving the bonus, and therefore there was no violation of the statute.

**3. Damages and Remedies— liquidated damages—failure to pay stock bonus**

Although plaintiff contends the trial court erred by failing to award him liquidated damages under N.C.G.S. § 95-25.22(a1) based on defendants' failure to pay plaintiff his stock bonus when plaintiff left the company, this issue is not addressed based on the Court of Appeals' holding in the case.

Appeal by plaintiff and defendants from judgment entered 20 April 2001 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 April 2002.

*Mitchell, Rallings & Tissue, PLLC, by C. Spencer Alridge, II for plaintiff-appellee.*

*Robinson, Bradshaw & Hinson, PA, by Charles E. Johnson and Angelique R. Vincent for defendants-appellants.*

THOMAS, Judge.

Defendants, First Union Capital Markets Corporation (FUCMC), Wheat First Securities, Inc. (WFS), and First Union Corporation (First Union), appeal from a grant of summary judgment on plaintiff's claim that they improperly withheld part of his bonus. Plaintiff, Phillip Murphy, appeals from a denial of liquidated damages.

For reasons discussed herein, we reverse and remand.

The relevant facts are as follows: Plaintiff was employed by First Union on 29 March 1993. Between then and when he resigned 21 May 1998, plaintiff worked for First Union or its subsidiaries, FUCMC and WFS.

During 1996, plaintiff earned a one million dollar bonus, which was paid to him in its entirety. By the beginning of 1997, however, First Union developed a Premium Stock Deferral Plan (Plan), in which a portion of employees' bonuses would be converted into restricted shares of First Union stock. Those shares vested after three years of additional employment. First Union would then add a 50% premium to the deferral. Plaintiff, however, stated he did not want to participate in the Plan and never signed any consenting document. Plaintiff's bonus for 1997 was $1.2 million. He was paid $900,000 on 15 February 1998, with $300,000 placed in the Plan.

Plaintiff was allegedly told by his immediate supervisor, Steven Kohlhagan, that if plaintiff were to leave First Union, plaintiff would

receive all money withheld through the plan but would not receive any of First Union's contributions. Nevertheless, under the Plan's terms, if plaintiff were to voluntarily terminate his employment with First Union, FUCMC, or WFS, prior to the vesting of the stock for any reason other than death or retirement, he would forfeit the full amount of what had been placed in the Plan.

Plaintiff refused to sign an authorization for his participation in the Plan but was then informed by his supervisors that he had no choice—the Plan was going into effect and his compensation would be paid accordingly.

Plaintiff resigned from First Union on 21 May 1998 and accepted a similar position with NationsBank. Despite repeated demands, defendants refused to pay the $300,000 which had been placed in the Plan. Plaintiff filed a complaint, alleging: (1) improper wage withholding; (2) violation of N.C. Gen. Stat. § 95-25.6; (3) civil conversion; (4) breach of contract; (5) detrimental reliance; and (6) civil conspiracy. Plaintiff requested liquidated and punitive damages.

Both parties filed summary judgment motions. The trial court granted partial summary judgment to plaintiff for: (a) improper wage withholding; (b) violation of section 95-25.6; and (c) parent liability of First Union for wage violations by FUCMC and WFS. The trial court granted defendant's summary judgment motion as to plaintiff's claims for: (1) civil conversion; (2) punitive damages; (3) breach of contract; (4) detrimental reliance; and (5) civil conspiracy. Additionally, the trial court allowed plaintiff's motion for interest pursuant to section 95-25.22(a), denied plaintiff's motion for liquidated damages, and deferred and reserved plaintiff's motion for costs and attorney fees. Pursuant to Rule 54 of the North Carolina Rules of Civil Procedure, the trial court certified the judgment for immediate appeal.

Before we consider defendants' arguments, we note the trial court's order would not normally be immediately appealable because it would be considered interlocutory. *State ex rel. Employment Security Commission v. IATSE Local 574*, 114 N.C. App. 662, 663, 442 S.E.2d 339, 340 (1994). A ruling is interlocutory if it does not determine the issues but directs some further proceeding preliminary to a final decree. *Blackwelder v. Dept. of Human Resources*, 60 N.C. App. 331, 299 S.E.2d 777 (1983). However, an interlocutory order may be heard in appellate courts if it affects a substantial right. *See* N.C. Gen. Stat. § 1-277(a) (1999). In the instant case, there are factual claims common to the appealed claim and the remaining claims,

including defendants' counterclaims against plaintiff. An appellant has a substantial right to avoid two trials on the same question. *See Davidson v. Knauff*, 93 N.C. App. 20, 24-27, 376 S.E.2d 488, 490-92, *rev. denied*, 324 N.C. 577, 381 S.E.2d 772 (1989). We therefore consider the appeal.

**[1]** By defendants' first assignment of error, they initially argue the trial court erred in granting summary judgment to plaintiff on the issue of whether section 95-25.8 was violated because plaintiff's bonus is not a wage.

The Wage and Hour Act defines "wage" as:

compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation . . . For the purposes of G.S. 95-25.6 through 95-25.13 "wage" includes sick pay, vacation pay, severance pay, commissions, *bonuses*, and other amounts promised when the employer has a policy or practice of making such payments.

N.C. Gen. Stat. § 95-25.2(16) (1999) (Emphasis added).

Defendants contend the part of the bonus placed in the Plan is not a wage because it has not yet vested. Therefore, it is not the property of the employee. Under the Plan, 25% of the bonus must be deferred into the stock plan. After three years, the stock benefit vests. Nonetheless, nothing in the N.C. Wage and Hour Act limits a wage to that which is vested. Under section 95-25.2(16), the bonus is a promised amount that an employer has a practice of disbursing. The bonus at issue satisfies this definition. We therefore hold that plaintiff's bonus, including that part put in the Plan, was indeed a wage under section 95-25.2(16).

Defendants further argue, however, that plaintiff should be estopped from prevailing on his claim because the Wage and Hour Act expressly provides for forfeiture of earned bonuses. We agree.

Defendants contend plaintiff was put on notice that part of his bonus would be diverted into a mandatory stock plan. North Carolina's Wage and Hour Act, section 95-25.7 provides, in pertinent part, that:

Wages based on bonuses, commissions or other forms of calculation shall be paid on the first regular payday after the amount

becomes calculable when a separation occurs. Such wages may not be forfeited unless the employee has been notified in accordance with G.S. 95-25.13 of the employer's policy or practice which results in forfeiture. Employees not so notified are not subject to such loss or forfeiture.

N.C. Gen. Stat. § 95-25.7 (2001). Section 95-25.13, provides in pertinent part, that an employer must:

Notify its employees, in writing or through a posted notice maintained in a place accessible to its employees, of any changes in promised wages prior to the time of such changes except that wages may be retroactively increased without the prior notice required by this subsection[.]

N.C. Gen. Stat. § 95-25.13(3) (2001).

The evidence shows that plaintiff was notified in writing that 75% of his bonus would be paid in cash. The remaining 25%, plus a 50% premium, would be paid as stock as long as he remained with the corporation for at least three additional years. Plaintiff was clearly notified that if he quit his job, he would forfeit the 25% set aside.

The forfeiture provision of Chapter 95 has been construed by this Court "to permit an employer to make changes in an employee's benefits, but the change applies only to those benefits accruing after written notice is given the employee or notice is posted in a place accessible to the employees." *McCullough v. Branch Banking & Trust Co., Inc.*, 136 N.C. App. 340, 349, 524 S.E.2d 569, 575 (2000). As defendants notified plaintiff in writing of the changes to employee benefits prior to the implementation of the Plan, they did not violate the Wage and Hour Act by forfeiting plaintiff's stock when he left to work elsewhere.

Accordingly, we hold that although plaintiff's bonus is a wage under section 95-25.2(16), it was properly forfeited under section 95-25.7. We therefore reverse the trial court's grant of summary judgment and hold that the trial court should have granted summary judgment in favor of defendants on this issue. *See* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001).

[2] By defendants' second assignment of error, they argue the trial court erred in granting summary judgment to plaintiff for violation of section 95-25.6. We agree.

Section 95-25.6 states that:

> Every employer shall pay every employee all wages and tips accruing to the employee on the regular payday. Pay periods may be daily, weekly, bi-weekly, semi-monthly, or monthly. *Wages based upon bonuses, commissions, or other forms of calculation may be paid as infrequently as annually if prescribed in advance.*

N.C. Gen. Stat. § 95-25.6 (2001) (Emphasis added). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c).

Here, First Union informed plaintiff by letter that he would receive his bonus on 15 February 1998, the regularly scheduled payday. On that date, plaintiff received $900,000 in cash and $300,000 in restricted stock, although the stock portion had not yet vested. Plaintiff was informed about the plan in advance of receiving the bonus. As with section 95-25.7, we do not find that section 95-25.6 was violated. Plaintiff's summary judgment motion should not have been granted.

[3] By plaintiff's only assignment of error, he argues the trial court erred in failing to award him liquidated damages pursuant to N.C. Gen. Stat. § 95-25.22(a1). We do not address this issue because of our aforementioned holdings.

Accordingly, we hold that the trial court improperly granted plaintiff's summary judgment and improperly denied summary judgment in favor of defendants. We remand this case to the trial court for an entry of judgment consistent with this opinion.

REVERSED AND REMANDED.

Judges MARTIN and TYSON concur.